# In the United States Court of Federal Claims

No. 17-711C

(Filed Under Seal: October 11, 2017)

(Reissued for Publication: October 17, 2017)[1]

*******************************************
|                                         | * |                                  |
|-----------------------------------------|---|----------------------------------|
| SONORAN TECHNOLOGY AND                  | * |                                  |
| PROFESSIONAL SERVICES, LLC,             | * |                                  |
|                                         | * |                                  |
|                        Plaintiff,       | * | Bid Protest; Timeliness; Blue    |
|                                         | * | & Gold Fleet; Waiver; Undue      |
| v.                                      | * | Delay in Asserting Protest       |
|                                         | * | Grounds; Failure to Intervene    |
| THE UNITED STATES,                      | * | in Earlier Protests Involving    |
|                                         | * | Same Solicitation; Patent        |
|                        Defendant,       | * | Error in Solicitation; Time      |
|                                         | * | for Challenging an Agency's      |
| and                                     | * | Corrective Action; SBA           |
|                                         | * | Certificate of Competency;       |
| SPECTRE PURSUIT GROUP, LLC,             | * | Injunctive Relief.               |
|                                         | * |                                  |
|                   Defendant-Intervenor. | * |                                  |
|                                         | * |                                  |

*******************************************

*Brett W. Johnson*, with whom was *Andrew Sniegowski*, Snell & Wilmer, LLP, Phoenix, Arizona, for Plaintiff.

*Jessica L. Cole*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., and *Captain Ryan Payne*, Of Counsel, Commercial Litigation Field Support, U.S. Air Force, for Defendant.

---

[1] The Court issued this decision under seal on October 11, 2017, and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before October 18, 2017. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full.

*J. Bradley Reaves*, with whom was *Beth V. McMahon*, ReavesColey, PLLC, Chesapeake, Virginia, for Defendant-Intervenor.

OPINION AND ORDER

WHEELER, Judge.

In this bid protest, Sonoran Technology and Professional Services, LLC ("Sonoran") challenges the United States Air Force's decision to terminate Sonoran's contract to train aircrew to fly B-52 and B-51 aircrafts and award the same contract to Spectre Pursuit Group, LLC ("SPG") as a result of corrective action. Sonoran alleges that the Air Force's award to SPG was arbitrary and capricious, while the Government argues that Sonoran's claims are untimely. For the reasons discussed below, the Court finds that Sonoran's claims are indeed untimely and therefore DISMISSES Sonoran's complaint in its entirety.

Background

On February 29, 2016, the Air Force issued Request for Proposal FA6800-16-R-0001 (the "Solicitation") seeking a service-disabled veteran-owned small business ("SDVOSB") for courseware development and training for its aircrew flying B-52 and B-51 aircrafts. AR 489. The awardee was required to have a facility security clearance ("FCL") at the time of the award. Id. at 558. Sonoran and SPG were two of nine offerors who submitted proposals. Id. at 2287–2944. At the time SPG submitted its proposal, it did not have the required FCL. Id. at 9255, 2315. On July 22, 2016, the Contracting Officer ("CO"), Captain John R. Sidor, determined that SPG was not eligible for award because it had not received an FCL, and he promptly awarded the contract to Sonoran. Id. at 6391, 6653.

After first filing before the Government Accountability Office ("GAO"), which dismissed the protest, SPG filed a bid protest before this Court on November 28, 2016, challenging the Air Force's decision not to refer SPG to the Small Business Administration ("SBA") for a responsibility determination. Id. at 8728–85. Sonoran did not intervene in that protest. Id. On December 7, 2016, before any briefing was completed, Capt. Sidor took corrective action and referred the matter of SPG's responsibility to the SBA. Id. at 8762. Based on this corrective action, this Court dismissed SPG's protest on December 8, 2016. Id. at 8768.

On January 5, 2017, the SBA notified the Air Force and SPG that it could not make a responsibility determination because the contract had already been awarded to Sonoran. Id. at 8772. The next day, SPG filed a new bid protest before this Court challenging the SBA's failure to make a responsibility determination. Id. at 8773. Sonoran also did not intervene in that protest. Id. at 8776–86. The SBA decided that SPG's case presented

"unique circumstances" warranting reconsideration including the fact that SPG had filed a protest, the Government had informed the Court that a Certificate of Competency ("COC") would be processed, and the Air Force committed in writing to terminate the award to Sonoran once SBA issued a COC to SPG. Id. at 9721. On January 24, 2017, after SPG had secured an FCL, the SBA determined that SPG was responsible and issued a COC despite Sonoran's contract still being in effect. Id. at 8824. On February 2, 2017, Capt. Sidor terminated Sonoran's contract and made an award to SPG. Id. at 8827, 8829. Capt. Sidor explained to Sonoran that the Air Force was terminating the contract "[a]s a result of corrective action . . . in response to a protest filed by [SPG]." Id. at 8829. This Court dismissed SPG's second protest as moot the following day. Spectre Pursuit Group, LLC v. United States, No. 17-26C (Fed. Cl., Feb. 3, 2017) (Dkt. No. 18).

Sonoran filed this protest on May 30, 2017 and SPG intervened on May 31, 2017. Dkt. Nos. 1, 9. The Government filed the Administrative Record on June 9, 2017. Dkt. No. 13. On June 15, 2017, Sonoran filed a motion to supplement the Administrative Record with depositions from Capt. Sidor and a representative from the SBA. Dkt. No. 14. On June 27, 2017, the Court granted the motion in part and ordered a limited deposition of Capt. Sidor. Dkt. No. 23. The Court also denied the motion in part by refusing to allow Sonoran to depose a representative of the SBA because Sonoran never challenged the SBA's COC determination in its complaint. Therefore, any discovery into the SBA's reasoning behind issuing the COC would be irrelevant to Sonoran's protest. Id. at 5.

On June 27, 2017, Sonoran filed a second motion to supplement the Administrative Record seeking the inclusion of "all records currently in possession of [the Government] that have not yet been disclosed related to the SBA's decision to grant [SPG's COC]." Dkt. No. 26, at 2. In its response, the Government voluntarily amended the Administrative Record with correspondence between the SBA and Air Force regarding Capt. Sidor's request that the SBA provide the Air Force with its rationale for issuing SPG a COC. AR 8826. In light of the Government's disclosure of correspondence between the SBA and Air Force about the COC, the Court granted in part Sonoran's second motion to supplement the Administrative Record by requiring the Government to provide "all communications, emails, and documents specifically referred to" in the disclosed correspondence between the SBA and Air Force. Dkt. No. 41, at 6. The Court was careful to require only those documents related to the Government's voluntary disclosure as all else would be irrelevant. Id. The Government supplemented the Administrative Record with these documents on July 12, 2017. Dkt. No. 36.

On July 12, 2017, Sonoran filed a motion to amend its complaint to specifically include counts against the SBA for improperly issuing a COC to SPG and improperly reconsidering its initial declination to issue a COC to SPG. Pl.'s Mot., Ex. A, at 10–11. This Court denied Sonoran's motion on August 9, 2017, as the Court lacked jurisdiction to review the SBA's decision to issue SPG a COC, and Sonoran could not justify its delay in seeking to amend its complaint. Dkt. No. 50, at 4–5.

On August 11, 2017, Sonoran filed its motion for judgment on the administrative record, claiming that the Air Force's award to SPG was arbitrary and capricious and requesting injunctive relief. Dkt. No. 53. The Government and SPG filed their cross-motions for judgment on the administrative record on September 11, 2017, arguing that Sonoran's claims were untimely and, alternatively, that the Air Force's decision to award SPG the contract was rational. Dkt. Nos. 54, 55. The parties completed briefing on their motions on October 3, 2017, and the Court has deemed oral argument unnecessary.

## Discussion

The Tucker Act grants this Court subject matter jurisdiction over bid protests. 28 U.S.C. § 1491(b)(1) (2012). In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012). Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004). An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001). Further, an agency must articulate a "rational connection between the facts found and the choice made." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted). The Court's review is "highly deferential" to the agency as long as the agency has rationally explained its award decision. Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor. Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

However, timeliness is a threshold issue that must be addressed prior to reaching the merits of a bid protest. See Amazon Web Servs., Inc. v. United States, 113 Fed. Cl. 102, 113 (2013). Where, as here, an offeror misses its opportunity to fairly challenge the terms of a solicitation as well as an agency's subsequent corrective action, it cannot then be allowed to avoid the timeliness bar by mischaracterizing its case as an evaluation challenge. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007); see also Cubic Def. Sys. v. United States, 45 Fed. Cl. 450, 461 (1999). Sonoran has done just that: it has attempted to circumvent its inexcusable delay in bringing its claims by misrepresenting the issues at hand. As such, for the reasons discussed below, the Court finds that Sonoran's claims are untimely and that Sonoran is not entitled to injunctive relief.

4

A. Sonoran's Claims Are Untimely.

In its complaint, Sonoran alleges five Counts against the Government for the Air Force's decision to cancel its initial contract award to Sonoran and instead award the same contract to SPG after taking corrective action. Counts I, II and III are challenges to the terms of the Solicitation, Compl. ¶¶ 31–38 (Count I), 39–47 (Count II), 48–58 (Count III), while Counts IV and V are challenges to the Air Force's corrective action. Id. ¶¶ 59–72. Each of these categories of challenges are addressed in turn.

1. Counts I, II and III of Sonoran's Complaint Are Untimely Because they Should Have Been Raised Before the Close of Bidding.

The Government requests the Court to dismiss Counts I, II and III of Sonoran's complaint as untimely because Sonoran did not challenge the terms of the Solicitation prior to the close of bidding. Def.'s Mot. at 17–20. Sonoran alleges in Count I that SPG failed to comply with a material requirement of the Solicitation that it possess an FCL at the time of its proposal submission and at the time of the initial contract award, rendering it "non-responsive." Compl. ¶¶ 33–35. In Count II, Sonoran alleges that the Air Force failed to follow its evaluation plan by awarding the contract to SPG despite the fact that SPG did not obtain an FCL prior to submitting its bid proposal. Id. ¶¶ 42–44. Sonoran further alleges in Count III that the Air Force improperly scored SPG's past performance "far too high" during its evaluation of proposals. Pl.'s Mot. at 15; Compl. ¶¶ 51–57. The Government counters that Sonoran waived Counts I and II of its complaint because there was a patent ambiguity in the Solicitation regarding when bidders must acquire an FCL, and such a challenge to the terms of the Solicitation should have been raised before the close of bidding, not after the Air Force made its final award. Def.'s Mot. at 17–18. The Government further argues that Count III of Sonoran's complaint is also an untimely challenge to the terms of the Solicitation because Sonoran's allegation is akin to arguing that the Air Force's past evaluation of SPG was in contravention of the Small Business Act, 15 U.S.C. § 631, *et seq.*, and thus, should have been raised before the close of bidding. Def.'s Mot. at 18–20.

A disappointed bidder must seek clarification of any solicitation terms containing patent errors prior to the closing of the bidding process. Blue & Gold Fleet, 492 F.3d at 1313; see also Benchmade Knife Co., Inc. v. United States, 79 Fed. Cl. 731, 737 (2007); Erinys Iraq Ltd. v. United States, 78 Fed. Cl. 518, 533 n.7 (2007); Scott v. United States, 78 Fed. Cl. 151, 154 n.2 (2007); Moore's Cafeteria Servs. v. United States, 77 Fed. Cl. 180, 185 (2007). An error in a solicitation "is patent if it is 'an obvious omission, inconsistency or discrepancy of significance.'" Per Aarsleff A/S v. United States, 829 F.3d 1303, 1312 (Fed. Cir. 2016) (quoting E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334 (Fed. Cir. 2004)). Additionally, if a bidder alleges that an agency's evaluation of a proposal runs afoul of applicable statutes and regulations, those allegations are challenges to the terms of the solicitation that must be brought before the close of bidding. Blue &

5

Gold Fleet, 492 F.3d at 1313; Visual Connections, LLC v. United States, 120 Fed. Cl. 684, 696 (2015).

Here, as to Counts I and II, it is clear that the Air Force's Solicitation contains a patent error and ambiguity with regard to how and when bidders were required to obtain the necessary FCLs. Paragraph 4.7.1 of the Performance Work Statement ("PWS") attached to the Air Force's Solicitation states that the contractor "must possess a facility security clearance at the minimum classification level of SECRET at the time of proposal submission," and further states that the Government would request and pay for a "TOP SECRET" facility security clearance for the contractor if the contractor did not possess one. AR 9429. In contrast, the RFP also contains a provision from the Air Force FAR Supplement ("AFFARS") stating that the offeror "must possess, or acquire *prior to award of contract*, a facility clearance equal to the *highest* classification stated on the Contract Security Classification Specification . . . attached to this solicitation." Id. at 9410 (emphasis added). Based on these two conflicting provisions in the RFP, it is entirely unclear when and how bidders were supposed to obtain a "TOP SECRECT" FCL; on the one hand, the PWS states that the Government will request one for the contractor at an unspecified time and assume the costs, while the AFFARS provision requires the offeror to obtain one prior to the making of an award.

Sonoran argues that these two provisions are not in conflict and that the CO, Capt. Sidor, understood the FCL requirements to be clear and unambiguous. Pl.'s Rep. at 3. However, this argument is contradicted by the administrative record. In fact, in his Statement of Facts, Capt. Sidor states the opposite of what Sonoran alleges:

> At this time, the [Source Selection Evaluation Board ("SSEB")] recognized that an *apparent conflict* between the PWS and the AFFARS provision 5352.215-9000 where PWS paragraph 4.7.1 required the SECRET Facility Clearance at the time of proposal submission while the AFFARS provision required a TOP SECRET Facility Clearance prior to making award. Furthermore, PWS paragraph 4.7.1 states the government would request a TOP SECRET clearance and assume the costs of conducting a security investigation. Thus, the SSEB made the decision to apply a less restrictive interpretation of the two *apparent conflicting* requirements which allowed SPG's proposal to be evaluated despite its lack of the required SECRET FCL at time of proposal. Therefore, SPG was included in the competitive range since AFFARS 5352.215-9000 stated a TOP SECRET FCL was not required until time of award and the PWS stated the government would apply for a TOP SECRET FCL if an offeror had the requisite

>   SECRET FCL, giving SPG more time to obtain a SECRET
>   FCL.

AR 9252–53 (emphasis added) (citations omitted).[2]  Additionally, the fact that the SSEB had to choose between conflicting interpretations of the RFP provisions demonstrates that there was indeed a patent error within the Solicitation related to the FCL requirement.

   Sonoran argues that even if a patent error in the Solicitation did exist, Counts I and II of its complaint are timely because only a "disappointed bidder" must assert such challenges to the terms of a Solicitation before the close of bidding as held by the Federal Circuit in Blue & Gold Fleet, and it was not a "disappointed bidder" because it was the initial awardee.  See Pl.'s Rep. at 4–5.  However, Sonoran adopts an unrealistically technical interpretation of "disappointed bidder."  The Court acknowledges that in most cases, an awardee is unlikely to challenge the terms of a solicitation and that in most instances, a "disappointed" bidder will be the one to mount a challenge.  But that is not to say that this Court should refuse to apply the waiver doctrine to initial awardees who lose a contract award after corrective action, because doing so would defeat the entire purpose behind the waiver doctrine:  to preclude bidders from waiting to see if they receive an award before challenging the terms of the Solicitation.  See Blue & Gold Fleet, 492 F.3d at 1313–14.  Sonoran did just that:  it waited until it received the initial award, had that award taken away as a result of corrective action, and *then* challenged the terms of the Solicitation by alleging that SPG and the Air Force acted in violation of the Solicitation's terms, which contained a patent ambiguity.  Plainly stated, Sonoran missed its chance to mount its challenges.  As such, the Court finds that Sonoran waived Counts I and II of its complaint.

   As to Count III, Sonoran alleges that the Air Force's favorable past performance evaluation of SPG was irrational because as a SDVOSB set aside, the SDVOSB contractors bidding for the contract are required to perform 50 percent of the work on the Solicitation, and SPG could not have possibly met this requirement since SPG was created in November of 2015 and had to rely on the past performances of its subcontractors and joint venture partners.  Compl. ¶¶ 51–57; Pl.'s Mot. at 15.  While Sonoran does not mention the act by name, the Government is correct to point out that the "50 percent" requirement Sonoran refers to is codified in the Small Business Act, 15 U.S.C. §§ 644(o), 657s.  See Def.'s Mot. at 18–20.  The Government is also correct to categorize this allegation as a challenge to the terms of the Solicitation as they relate to and deviate from the regulations laid out in the Small Business Act.  Id. at 19.  Sonoran does not refute this categorization in its reply.  As noted above, allegations that an agency's evaluation of a proposal runs afoul of applicable statutes and regulations are challenges to the terms of the solicitation that must be brought before the close of the bidding process.  See Blue & Gold Fleet, 492 F.3d at 1313; Visual Connections, LLC, 120 Fed. Cl. at 696.  Since Sonoran brought this challenge well after

---

[2] The SSEB is the larger group to which the CO is a part.

the close of bidding, Sonoran has waived it.  Accordingly, the Court finds Count III of Sonoran's complaint to be untimely.

> 2. Counts IV and V of Sonoran's Complaint Are Untimely Because they Should Have Been Raised Before the Air Force Made its Final Award to SPG.

The Government, along with SPG, also requests the Court to dismiss Counts IV and V of Sonoran's complaint as untimely because Sonoran did not challenge the Air Force's corrective action prior to the Air Force making its final award.  Def.'s Mot. at 20–23.  Sonoran alleges in Count IV that the Air Force's decision to award SPG the contract was arbitrary and capricious because SPG was a "non-responsible bidder."  Compl. ¶¶ 60–64; Pl.'s Mot. at 16–19.  Sonoran further alleges in Count V that the Air Force's decision to rely on the SBA's COC determination in making its final award to SPG was inappropriate because SPG's non-responsibility and non-responsiveness had nothing to do with SPG's size.  Compl. ¶¶67–72; Pl.'s Mot. at 19–23.  The Government contends that Sonoran waived both Counts IV and V because such allegations are challenges to the Air Force's corrective action, which must be raised before an agency makes a final award.  Def.'s Mot. at 20–23.

A party who participates in a second round of proposal submissions rather than protesting cannot subsequently challenge an agency's decision to reopen discussions or reevaluate proposals.  See Sheridan Corp. v. United States, 95 Fed. Cl. 141, 149–150 (2010) ("[W]ere the Court to dismiss Sheridan's claims as not ripe for review, the current protest grounds later could be challenged as untimely if Sheridan does not prevail during the resolicitation process"); see also Cubic Def. Sys., 45 Fed. Cl. at 461 ("Cubic failed to complain of this alleged error at the appropriate time – when the Air Force continued to allow Metric to compete, or at least prior to submitting its final offer").  Vendors cannot "sit on their rights to challenge what they believe is an unfair solicitation, roll the dice and see if they receive award and then, if unsuccessful, claim the solicitation was infirm."  Blue & Gold Fleet, 492 F.3d at 1313.

Here, while the Air Force did not formally open a second round of proposal submissions, its decision to take corrective action by referring SPG to the SBA for a COC determination is akin to a reevaluation of proposals for the initial contract.  Thus, if Sonoran had concerns with the Air Force's proposed corrective action, the time to protest was before the SBA made its COC determination.  Sonoran failed to make such a timely protest.  Instead, Sonoran argues that it did not have sufficient notice of the Air Force's intent to take corrective action and therefore cannot be penalized for waiting to mount its challenge.  Pl.'s Rep. at 7.  However, Sonoran's arguments are completely without merit; in fact, Sonoran had both ample notice of the proposed corrective action and ample time to challenge it.  For example, Sonoran surely would have learned that corrective action was on the horizon if it had intervened in SPG's initial bid protest before this Court on

November 28, 2016, after the Air Force declined to refer SPG to the SBA for a responsibility determination. See AR 8728–29. It chose not to intervene. Id. Sonoran also could have intervened in SPG's second bid protest before this Court on January 6, 2017, after the SBA notified the Air Force and SPG that it could not make a responsibility determination because the contract had already been awarded to Sonoran. Id. at 8772; 8776–86. Once again, it chose not to intervene. Id. at 8776–86. Why Sonoran chose not to intervene in either of these protests is beyond the Court's comprehension, as Sonoran should have known that its award was at risk of being rescinded and granted to SPG instead as a result of potential corrective action.[3]

Even putting Sonoran's failures to intervene aside, it still had ample notice that the Air Force was taking corrective action from other sources, including the Air Force's notice of intent to take corrective action filed on December 7, 2016, id. at 8762–63, and this Court's subsequent dismissal of SPG's first protest on December 8, 2016. Id. at 8768. These documents were not filed under seal and were publically available for a nominal fee on PACER. Sonoran's argument that it should not be responsible for monitoring a public docket involving its own contract award because "access to PACER requires registration and payment for documents" is unpersuasive, especially given its status as the initial recipient of a $37,307,142 contract award. Pl.'s Mot. at 7; AR 6367.

In sum, Sonoran had approximately two months to challenge the Air Force's proposed corrective action from the time it reasonably should have learned of the potential corrective action by way of SPG's first protest in this Court on November 28, 2016, to the time the SBA issued SPG a COC on January 24, 2017. AR 8824–25. Sonoran was not permitted to wait for the Air Force to complete the corrective action to see if its award was upheld. See Blue & Gold Fleet, 492 F.3d at 1313. Accordingly, the Court finds that Sonoran waived Counts IV and V of its complaint, thus rendering Sonoran's entire complaint untimely.

    B.  Sonoran Is Not Entitled to Injunctive Relief.

Sonoran also seeks a permanent injunction requiring the Air Force to terminate its contract award to SPG and instead award the contract to Sonoran. Compl. at 9; Pl.'s Mot. at 28–29. The Tucker Act expressly empowers the Court to award "any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). The Court must consider four factors before granting permanent injunctive relief: (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors granting injunctive relief; and (4) whether granting injunctive relief serves the public interest. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Village of Gambell, Alaska,

---

[3] Additionally, the Air Force issued Sonoran a "Stop Work Order" on November 30, 2016 in response to SPG's first protest in this Court, which should have put Sonoran on notice. See AR 9704.

480 U.S. 531, 546 n.12 (1987)).  Plaintiff has the burden of establishing the four factors by preponderant evidence.  MORI Assocs., Inc. v. United States, 102 Fed. Cl. 503, 551 n.60 (2011) (citing cases).  As the Court finds Sonoran's complaint to be untimely, Sonoran has not succeeded on the merits of this case.  Since success on the merits is an essential factor in determining whether to issue a permanent injunction, id. at 551, the Court need not evaluate the remaining three factors.  Thus, the Court denies Sonoran permanent injunctive relief.

      C.  Judgment on the Administrative Record

Finally, the Court notes that because it has found Sonoran's claims to be untimely, it need not resolve whether the Air Force's award to SPG was reasonable.

## Conclusion

Based upon the foregoing, the Court DISMISSES Sonoran's claims as untimely and need not reach the parties' cross-motions for judgment on the administrative record, as they are moot.  The Clerk is directed to enter judgment accordingly.  No costs.

    IT IS SO ORDERED.

                                                     s/ Thomas C. Wheeler
                                                     THOMAS C. WHEELER
                                                     Judge